1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10    CLARENCE WEBSTER,

11              Plaintiff,                        No. 2:12-cv-1891-KJN

12         v.

13    COMMISSIONER OF
      SOCIAL SECURITY,
14
                Defendant.                        ORDER
15    _____/

16              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17    Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits

18    ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the

19    Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends

20    that the Commissioner erred by finding that plaintiff was not disabled from January 1, 2006,

21    through the date of the final administrative decision.  (ECF No. 14.)  The Commissioner filed an

22    opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 17.)

23    Thereafter, plaintiff filed a reply brief.  (ECF No. 18.)

24    _____

25         [1] This case was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15),
      and both parties voluntarily consented to proceed before a United States Magistrate Judge for all
26    purposes.  (ECF Nos. 7, 9.)

                                                1

For the reasons that follow, the court denies plaintiff's motion for summary judgment, grants the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.    BACKGROUND

Plaintiff was born on June 12, 1963, has a limited education, and has no past relevant work.[2]  (Administrative Transcript ("AT") 20, 80-83, 129, 132.)  On October 31, 2008, plaintiff applied for DIB and SSI, alleging that he was unable to work as of January 1, 2006, due to bipolar disorder, paranoid schizophrenia, depression, and medication.  (AT 13, 80-83, 172.)  On June 30, 2009, the Commissioner determined that plaintiff was not disabled.  (AT 13, 87-91.)  Upon plaintiff's request for reconsideration, the determination was affirmed on October 16, 2009.  (AT 13, 95-100, 101-07.)  Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 21, 2010, and at which plaintiff was represented by counsel.  (AT 13, 41-79.)

In a decision dated August 18, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from January 1, 2006, through the date of that decision.  (AT 13-21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 1, 2012.  (AT 1-4.)  Thereafter, plaintiff filed this action in federal district court on July 18, 2012, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.   ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ improperly evaluated the opinion evidence concerning plaintiff's mental health; (2) whether the ALJ erroneously found that plaintiff did not suffer from a severe psychotic disorder at step two of the

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

sequential evaluation process; (3) whether the ALJ erred in finding that plaintiff's impairments did not meet or equal a listing; (4) whether the ALJ improperly discounted the testimony of plaintiff and third parties concerning his symptoms and functional limitations; and (5) whether the Appeals Council erred in not remanding the case to the ALJ.[3]

III.    LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.    DISCUSSION

A.    Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the

////

////

---

[3] Plaintiff's brief lists the issues raised in a somewhat different manner and order – some of plaintiff's issues overlap, and the issues are not presented in an order that logically comports with the Commissioner's sequential evaluation process.  For example, in order to meaningfully review the ALJ's determinations regarding severity at step two and listing at step three, it is first necessary to determine whether the medical opinion evidence was properly weighed and considered.  Accordingly, the court has set forth the issues presented in a manner that more logically comports with the sequential evaluation process.

Commissioner's standard five-step analytical framework.[4]  As an initial matter, the ALJ found

that plaintiff remained insured for purposes of DIB through June 30, 2007.  (AT 15.)  At the first

step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since

January 1, 2006, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ determined

that plaintiff had the following severe impairment: antisocial personality disorder.  (Id.)

However, at step three, the ALJ determined that plaintiff did not have an impairment or

combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part

404, Subpart P, Appendix 1.  (Id.)

////

---

[4]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4

1    Before proceeding to step four, the ALJ assessed plaintiff's residual functional

2  capacity ("RFC") as follows:

3              After careful consideration of the entire record, the undersigned
              finds that the claimant has the residual functional capacity to
4             perform a full range of work at all exertional levels but with the
              following nonexertional limitations: simple, repetitive work with
5             limited contact with public, co-workers and supervisors.

6  (AT 16.)

7    At step four, the ALJ found that plaintiff had no past relevant work.  (AT 20.)

8  However, at step five, the ALJ determined that, utilizing the Grids, and in light of plaintiff's age

9  (a younger individual), education (limited education with ability to communicate in English),

10  work experience, and RFC, there were jobs that existed in significant numbers in the national

11  economy that plaintiff could perform.  (AT 20-21.)

12    Accordingly, the ALJ concluded that plaintiff had not been under a disability, as

13  defined in the Act, from January 1, 2006, through the date of the ALJ's decision.  (AT 21.)

14    B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

15          1.    Whether the ALJ improperly evaluated the opinion evidence concerning

16                plaintiff's mental health

17    During the relevant period under review, plaintiff was incarcerated for

18  approximately two years in 2006-2008, and in 2009 was again detained for about three months

19  on a parole violation, when he was discovered to have had open beer containers in the car.  (AT

20  46-47.)  While incarcerated, plaintiff received mental health treatment from staff at the California

21  Department of Corrections, whereas he was treated by clinicians at the Parole Outpatient Clinic

22  while on parole.  The record contains treatment notes from both facilities, but the only treating

23  provider that submitted a mental functional capacity assessment form regarding plaintiff was Dr.

24  Florence Bailhache, plaintiff's treating psychologist at the Parole Outpatient Clinic.  Plaintiff

25  primarily contends that the ALJ improperly relied on the opinion of consultative examining

26  psychiatrist, Dr. Timothy Canty, to reject Dr. Bailhache's opinion.

1          The weight given to medical opinions depends in part on whether they are

2    proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari,

3    246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

4    Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

5    opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d

6    1273, 1285 (9th Cir. 1996).

7          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

8    considering its source, the court considers whether (1) contradictory opinions are in the record;

9    and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

10   treating or examining medical professional only for "clear and convincing" reasons.  Lester,

11   81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining professional

12   may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  While a treating

13   professional's opinion generally is accorded superior weight, if it is contradicted by a supported

14   examining professional's opinion (supported by different independent clinical findings), the ALJ

15   may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

16   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

17   weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ

18   in any event need not give it any weight if it is conclusory and supported by no more than

19   minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating

20   physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at

21   751.  The opinion of a non-examining professional, without other evidence, is insufficient to

22   reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

23   ////

24

25          [5]  The factors include: (1) length of the treatment relationship; (2) frequency of
     examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26   (5) consistency; (6) specialization.  20 C.F.R. § 404.1527.

1    Consultative examining psychiatrist Dr. Canty evaluated plaintiff on February 10,

2  2009.  (AT 262.)  He reviewed psychiatric notes from the California Department of Corrections,

3  and noted plaintiff's chief complaints to be hearing voices, paranoia, and depression, for which

4  plaintiff was taking Abilify, Risperdal, and Trazodone.  (Id.)

5    Plaintiff described hearing voices with negative comments since the fourth grade,

6  and Dr. Canty stated that plaintiff's description appeared genuine, although it was difficult to tell

7  if plaintiff experienced true auditory hallucinations as opposed to internal thoughts.  (AT 262,

8  265.)  Plaintiff also characterized himself as paranoid, although Dr. Canty indicated that plaintiff

9  did not actually describe paranoia/delusions, but instead referred to the content of his alleged

10  paranoia as things he did in the past and stated that he was fearful of retribution.  (Id.)

11  Furthermore, although plaintiff reported general depression, Dr. Canty noted that plaintiff did not

12  describe neuro-vegetative symptoms and that his tendency to isolate was attributed to his fear of

13  returning to prison, having served sentences for possession and sale of drugs, as well as bank

14  robbery.  (AT 262-63.)  According to plaintiff, he had abused methamphetamine, cocaine, and

15  "everything" starting in his teen years and ending in the 1980s, and he had been a daily heavy

16  drinker until his last prison term.  (AT 263.)  Plaintiff stated that he handled personal chores,

17  while his mother, with whom he lived, did everything else; he socialized with his mother; and he

18  occasionally watched television.  (Id.)  Dr. Canty observed that plaintiff was being treated at the

19  Parole Outpatient Clinic, but had never been psychiatrically hospitalized.  (AT 262.)

20    Dr. Canty noted that plaintiff had arrived early for his appointment and was well

21  groomed.  (AT 263.)  In the course of his mental status examination, Dr. Canty found that

22  plaintiff, despite his complaints of auditory hallucinations, was cooperative with clear speech,

23  mostly clear thinking, and no suicidal or homicidal ideation.  (Id.)  Although plaintiff described

24  his mood as "Depressed I guess," plaintiff did not name particular symptoms and appeared to be

25  in a good mood with a full affect.  (Id.)  Plaintiff was fully oriented, could perform basic

26  calculations, had normal memory, and a fair fund of knowledge.  (Id.)  Dr. Canty's primary

7

1   diagnosis was antisocial personality disorder.  (AT 264.)  He also diagnosed "[rule out]

2   Schizoaffective disorder" and alcohol dependence in remission, with a GAF of 55.[6]  (Id.)  Dr.

3   Canty observed that plaintiff's antisocial behavior and substance abuse appear to be at the root of

4   his poor work functioning, and that if plaintiff's claims of sobriety were to be believed, it would

5   be the first time that plaintiff was not using alcohol and/or drugs as an adult.  (AT 265.)

6                     Dr. Canty assessed plaintiff's mental functional capacity as follows:

7                     He is cognitively able to manage money but I would recommend a
                     professional payee if funds are awarded.  He is at extreme risk of
8                     relapse.  He denies ever participating in consistent prosocial work.
                     He did fairly well on the exam but his concentration is somewhat
9                     impaired.  Given his personal history I don't think he would be
                     appropriate to interact with the public.  From a purely psychiatric
10                    standpoint he may tolerate fairly low stress nonpublic work.  He
                     could probably get along with a few coworkers but the number
11                    should be limited.  If he remains clean and sober and free of
                     criminality he could do very simply tasks if highly motivated.  His
12                    chronic negative "voices" would distract him from anything other
                     than very simple tasks.  He seems reluctant to leave his house, but I
13                    don't think his psychiatric symptoms would interfere with
                     attending appropriate activities if he was strongly motivated to do
14                    so.

15  (AT 265.)  Dr. Canty opined that plaintiff's prognosis from a functional standpoint would depend

16  on his continued sobriety and his ability to resist committing crimes.  (Id.)

17                    Subsequently, on April 7, 2010, treating psychologist Dr. Bailhache completed a

18  two-page "Medical Source Statement - Mental" form.  (AT 335-36.)  She indicated that she last

19  saw plaintiff on March 3, 2010.  (AT 336.)  Dr. Bailhache stated that plaintiff had a fair ability to

20  understand and remember detailed/complex instructions and very short/simple instructions, but a

21  poor ability to carry out instructions; a poor ability to attend and concentrate; a fair ability to

22  work without supervision; a poor ability to interact with the public, coworkers, and supervisors;

23

24          [6] GAF is a scale reflecting "psychological, social, and occupational functioning on a
     hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental
25   Disorders 34 (4th ed. 2000).  A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat
     affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social,
26   occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Id.

1   and a poor ability to adapt to changes in the workplace, be aware of normal hazards and react

2   appropriately, and use public transportation to travel to unfamiliar places.  (AT 335-36.)  Dr.

3   Bailhache further opined that plaintiff could manage benefits in his own best interest and that his

4   prognosis was good with medication compliance.  (AT 336.)  The medical findings in support of

5   her assessment were noted to be "DSM IV diagnoses."  (AT 335-36.)

6           The court finds that the ALJ properly discounted treating psychologist Dr.

7   Bailhache's opinion and appropriately gave significant weight to the opinion of consultative

8   examining psychiatrist Dr. Canty.  Dr. Bailhache's two-page form contains no express diagnoses,

9   test results, clinical findings, or reasoning in support of her severe limitations.  As such, it is

10   conclusory and minimally supported, and can be discounted on that basis.  See Meanel, 172 F.3d

11   at 1114 (treating physician's conclusory, minimally supported opinion rejected); see also

12   Magallanes, 881 F.2d at 751.  Dr. Bailhache's severe opinion is also inconsistent with the weight

13   of her treatment records, which, despite recounting plaintiff's subjective reports of severe

14   symptoms, often documented relatively normal objective and clinical findings, including that

15   plaintiff was alert, cooperative, oriented, had normal speech, and had good grooming.  (See, e.g.,

16   AT 341, 344, 346, 350.)

17           By contrast, as outlined above, Dr. Canty's assessment contains detailed

18   diagnoses, clinical findings, and narrative discussions of plaintiff's impairments, symptoms, and

19   assessed functional limitations.  Because Dr. Canty personally examined plaintiff, resulting in

20   independent clinical findings, his opinion constitutes substantial evidence.

21           Plaintiff argues that Dr. Canty's opinion cannot constitute substantial evidence,

22   because Dr. Canty did not have adequate access to plaintiff's treatment records.  The court

23   disagrees.  The regulations require that a consultative examiner be given any necessary

24   background information about the plaintiff's condition.  20 C.F.R. § 404.1517.  Background

25   information is essential because consultative exams are used to try to resolve inconsistencies or

26   ambiguities in the evidence.  20 C.F.R. § 404.1519a(b).  An opinion on a documented medical

problem given after only a one-shot examination, without recourse to the plaintiff's available

medical records, is not one which can generally be relied upon.  This conclusion is especially true

in the case of mental health impairments, which may manifest to different degrees on different

occasions.

In this case, Dr. Canty specifically noted, at the time of his February 10, 2009

evaluation, that he had reviewed "a few psychiatric notes from the Department of Corrections."

(AT 262.)  Although plaintiff makes much of the fact that Dr. Canty only reviewed a few notes,

the administrative record shows that the total number of plaintiff's treatment records is fairly

limited, and that there is an even smaller number of treatment records that predate Dr. Canty's

evaluation – in particular, some 2007-2008 treatment notes from plaintiff's incarceration and a

few treatment notes from the Parole Outpatient Clinic, which operates under the Department of

Corrections.  (AT 227-58, 259-61, 337-38.)  Thus, there is no indication that the Commissioner

failed to provide Dr. Canty with all the records that were available at the time of Dr. Canty's

evaluation.

Plaintiff nevertheless contends that the Commissioner should have sent treatment

records generated after Dr. Canty's evaluation to Dr. Canty for a follow-up opinion.  That

argument lacks merit.  As an initial matter, plaintiff provides no authority for the proposition that

the Commissioner is necessarily required to provide subsequently-generated treatment records to

a consultative examiner after the consultative examiner has already performed an evaluation.  In

virtually every case further treatment records and opinions are generated after a consultative

examination is performed, and under plaintiff's interpretation, the Commissioner would

essentially be required to seek re-evaluations in all such cases.  The court declines to impose such

a novel and onerous requirement.

Moreover, even if a supplemental opinion may be required in some cases, such as

where the subsequently-generated treatment records and evidence show a material change in the

claimant's condition, such circumstances are not present in this case.  The treatment records post-

dating Dr. Canty's evaluation do not document a material change in plaintiff's mental health. Plaintiff largely continues to complain of auditory hallucinations, paranoia, and depression, with associated symptoms.  (AT 341-60.)  These complaints are very similar to what plaintiff told Dr. Canty during the evaluation and/or to what was documented in the treatment records that predate Dr. Canty's evaluation, which Dr. Canty reviewed.  As such, Dr. Canty already considered these reported symptoms and impairments as part of his assessment.  Plaintiff's suggestion that review of the subsequent records would have led Dr. Canty to change his assessment is purely speculative and not supported by the records themselves.

Plaintiff further argues that Dr. Canty's opinion is deficient, because he should have been provided with the third-party statements from plaintiff's relatives.  That argument is unpersuasive, because although the ALJ is required to, and in this case did, consider the lay testimony and statements of relatives (AT 17-18), plaintiff provides no binding authority that such information, which does not constitute medical evidence, must necessarily be provided to a consultative examiner.

Plaintiff also posits that Dr. Canty's opinion that plaintiff could perform simple work if he were sufficiently motivated is speculative and unsupported.  (AT 265.)  The court disagrees.  After examining plaintiff and performing psychological testing, it was certainly within Dr. Canty's clinical expertise to distinguish between plaintiff's medically determinable mental impairments and any general lack of motivation, which in itself need not be a mental impairment. Plaintiff informed Dr. Canty that, apart from personal chores, his mother does everything for him.  (AT 263.)  Additionally, plaintiff told Dr. Fariba Vesali, another consultative examiner who examined plaintiff for potential physical impairments not at issue in this appeal, that he does not do grocery shopping, does not cook, and does not do chores around the house "because he does not have to."  (AT 283.)  To be sure, lack of motivation can at times be a symptom of a medically determinable mental impairment, which a claimant may have a limited capacity to control.  However, when read globally, Dr. Canty's opinion does not suggest that plaintiff is

1   incapable of motivating himself to perform simple work.  In any event, even if a different

2   interpretation of Dr. Canty's opinion in that regard is plausible, the court defers to the ALJ's

3   resolution of such potential ambiguity.

4            Finally, as the ALJ noted, Dr. Canty's opinion is largely consistent with the notes

5   and assessments of plaintiff's treating psychiatrist at the Parole Outpatient Clinic, Dr. Paul

6   Malarik.  (AT 19-20.)  For example, on July 22, 2009, Dr. Malarik found that, despite plaintiff's

7   emotional outburst towards him, plaintiff was non-psychotic (linear, logical, and goal oriented) in

8   presentation, and could "quit quickly," rapidly become calm, and cooperate.  (AT 346-47.)

9   Although plaintiff was previously diagnosed with a psychotic disorder, Dr. Malarik disavowed

10  that former diagnosis, stating that plaintiff's:

11           reported symptoms, presentation, and possible effects of
             medications are inconsistent with most Axis I [diagnoses] that have
12           been proposed before.  There is little objective evidence of a major
             mental illness on Axis I, except for those that are substance related.
13           There is in fact ample evidence of an Axis II [disorder] such as
             Antisocial [Personality Disorder].  His serial drug seeking behavior
14           and abuse is both harmful to himself and possibly others, and
             should be discouraged.  Risks of high dose antipsychotics and
15           polypharmacy of antipsychotics greatly outweigh any benefits, if
             there are any.  The first principle of medicine is to "do no harm."
16           This client obvious[ly] has issues with authority figures,
             entitlement, antisocial behavior, and drug abuse (street and Rx).

17

18  (AT 347-49.)  Dr. Malarik diagnosed plaintiff with antisocial personality disorder with

19  sociopathic tendencies, noting that the prognosis for such a condition was poor.[7]  (AT 348.)  A

20  subsequent  February 17, 2010 treatment note by Dr. Malarik documented that plaintiff stated

21  that his medication was "kind of working," that his therapy was helping, and that he "survived

22

-------

23           [7] Although plaintiff emphasizes this poor prognosis, the fact that a condition has a poor
     prognosis, i.e., that the person is unlikely to recover from it, does not necessarily mean that the
24   condition itself is disabling.  Neither Dr. Canty nor Dr. Malarik opined that plaintiff was disabled
     by his antisocial personality disorder, but Dr. Canty did assess several mental limitations,
25   including social limitations, related to that condition.  (AT 265.)  Curiously, Dr. Bailhache
     concluded that plaintiff's mental health prognosis was actually good with medication
26   compliance.  (AT 336.)

1   being at Chuccie Cheese" with his relatives.  (AT 342.)  At that time, Dr. Malarik essentially

2   reiterated his assessment of July 22, 2009.  (AT 343.)

3              As is evident from the above, consultative examining psychiatrist Dr. Canty's

4   opinion was consistent with the opinion of treating psychiatrist Dr. Malarik in that both sources

5   diagnosed plaintiff with antisocial personality disorder and substance abuse issues, and both

6   opined that plaintiff likely did not suffer from a psychotic disorder.  Dr. Canty's opinion is thus

7   supported by his own clinical findings, the assessments of treating psychiatrist Dr. Malarik, and

8   the weight of the objective and clinical findings in plaintiff's treatment records.  As such, the

9   ALJ appropriately gave Dr. Canty's opinion substantial weight and incorporated his assessed

10  functional limitations into plaintiff's RFC.

11             Therefore, the court concludes that the ALJ's evaluation of the mental health

12  opinion evidence was free from prejudicial error and supported by substantial evidence in the

13  record as a whole.

14             2.   <u>Whether the ALJ erroneously found that plaintiff did not suffer from a</u>

15                  <u>severe psychotic disorder at step two of the sequential evaluation process</u>

16             Under the Commissioner's regulations, an impairment or combination of

17  impairments is deemed to be severe at step two if it "significantly limits your physical or mental

18  ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  As the Ninth Circuit

19  Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to

20  dispose of groundless claims.  An impairment or combination of impairments can be found not

21  severe only if the evidence establishes a slight abnormality that has no more than a minimal

22  effect on an individual's ability to work."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996)

23  (internal citations and quotation marks omitted).

24             In this case, as discussed above, consultative examining psychiatrist Dr. Canty

25  primarily diagnosed plaintiff with antisocial personality disorder and failed to definitively

26  diagnose plaintiff with a psychotic disorder.  (AT 264.)  This diagnosis is consistent with the

13

1   opinion of plaintiff's treating psychiatrist, Dr. Malarik, who likewise diagnosed antisocial

2   personality disorder and opined that there was little objective evidence of a major mental

3   disorder on Axis I, such as a psychotic disorder.  (AT 347.)  Therefore, substantial evidence

4   supports the ALJ's determination at step two.

5           Moreover, even assuming *arguendo* that the ALJ technically erred by not finding

6   a severe psychotic disorder at step two, such error is harmless if the ALJ proceeded to consider

7   the effects of that impairment at subsequent steps.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th

8   Cir. 2007).  Here, because the ALJ found another mental impairment to be severe at step two, the

9   ALJ proceeded to subsequent steps of the sequential disability evaluation process.  Dr. Canty's

10  functional capacity assessment, on which the ALJ substantially relied to formulate plaintiff's

11  RFC, incorporated plaintiff's symptoms potentially attributable to a psychotic disorder, such as

12  hearing "voices" (whether actual hallucinations or mere internal thoughts).  (AT 265.)  Indeed,

13  based on the distraction and impaired concentration resulting from these "voices," Dr. Canty, and

14  the ALJ, limited plaintiff to simple tasks.  (AT 16, 265.)

15          Accordingly, the court finds no prejudicial error at step two.

16          3.      Whether the ALJ erred in finding that plaintiff's impairments did not meet

17                  or equal a listing

18          In light of the above discussion, plaintiff's argument that his impairments meet or

19  equal a listing is so insubstantial as not to merit any significant further discussion.  The medical

20  evidence, when properly weighed, does not even remotely establish that plaintiff's impairments,

21  singly or in combination, meet or equal the criteria of Listing 12.03 (schizophrenic, paranoid and

22  other psychotic disorders), Listing 12.08 (personality disorders), or any other listing.  Sullivan v.

23  Zebley, 493 U.S. 521, 530-31 (1990) ("For a claimant to show that his impairment matches a

24  listing, it must meet *all* of the specified medical criteria ... For a claimant to qualify for benefits

25  by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a

26  listed impairment, he must present medical findings equal in severity to *all* the criteria for the one

most similar listed impairment.") (emphasis in original); see also Burch v. Barnhart, 400 F.3d

676, 683 (9th Cir. 2005) (explaining that the claimant "bears the burden of proving that ... she

has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the

Commissioner's regulations.").  In particular, neither consultative examining psychiatrist Dr.

Canty nor plaintiff's treating psychiatrist Dr. Malarik opined that plaintiff had marked limitations

in any particular mental functioning area, or that plaintiff had suffered repeated episodes of

decompensation of extended duration.  Notably, even Dr. Bailhache in her conclusory opinion

said nothing about listing equivalency, and instead noted that plaintiff's prognosis was good with

medication compliance (AT 336), a statement which appears inconsistent with a listing-level

impairment.

Therefore, the ALJ's analysis at step three is supported by substantial evidence.

4.    Whether the ALJ improperly discounted the testimony of plaintiff and

third parties concerning his symptoms and functional limitations

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court

of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or
> symptoms is credible, an ALJ must engage in a two-step analysis.  First,
> the ALJ must determine whether the claimant has presented objective
> medical evidence of an underlying impairment which could reasonably be
> expected to produce the pain or other symptoms alleged.  The claimant,
> however, need not show that her impairment could reasonably be expected
> to cause the severity of the symptom she has alleged; she need only show
> that it could reasonably have caused some degree of the symptom.  Thus,
> the ALJ may not reject subjective symptom testimony . . . simply because
> there is no showing that the impairment can reasonably produce the degree
> of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of
> malingering, the ALJ can reject the claimant's testimony about the severity
> of her symptoms only by offering specific, clear and convincing reasons
> for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time,

the ALJ is not required to believe every allegation of disabling pain, or else disability benefits

1   would be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

2          "The ALJ must specifically identify what testimony is credible and what

3   testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin.,

4   574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d

5   595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among

6   other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

7   testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

8   record, and testimony from physicians and third parties concerning the nature, severity, and effect

9   of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59

10  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

11  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

12  record, the court "may not engage in second-guessing."  Id. at 959.

13          Additionally, "competent lay witness testimony cannot be disregarded without

14  comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons

15  that are germane to each witness."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)

16  (internal quotation and citation omitted).

17          As an initial matter, the court notes that the ALJ did not entirely discredit

18  plaintiff's allegations of mental symptoms.  After summarizing plaintiff's pertinent testimony

19  and statements, the ALJ assessed significant mental limitations, restricting plaintiff to simple,

20  repetitive work with limited contact with the public, co-workers, and supervisors.  (AT 16-18.)

21  Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding his symptoms

22  and functional limitations, the ALJ provided specific, clear, and convincing reasons for doing so.

23          The ALJ observed that the medical opinion evidence and treatment records did

24  not support plaintiff's claims of disabling limitations to the degree alleged.  (AT 18-20.)  For the

25  reasons discussed above, that finding is supported by substantial evidence.  To be sure, "after a

26  claimant produces objective medical evidence of an underlying impairment, an ALJ may not

16

reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms.  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).  But even though lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider.  Burch, 400 F.3d at 681.

The ALJ further noted that, even though plaintiff had testified that medication did not help his symptoms, he reported to his treating providers that his medication was helpful, and that he was even able to tolerate some social situations, such as family functions and a visit to a pizza parlor.  (AT 20, 49, 59-60, 66, 238, 342, 346.)  The ALJ was permitted to consider inconsistencies in plaintiff's testimony and statements when evaluating his credibility.

The ALJ also stated that plaintiff responded well to questions at the hearing and did not appear paranoid.  (AT 20.)   Although the ALJ's own observations of the claimant at the hearing may not form the sole basis for discrediting the claimant's testimony, such observations may be used in the overall credibility evaluation.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985); SSR 96-7p, at *8.

Finally, the ALJ summarized the statements and testimony of plaintiff's relatives, including the testimony of plaintiff's sister at the hearing, in significant detail, clearly indicating that he had considered the information.  (AT 17-18.)  These statements and/or testimony essentially echoed plaintiff's own testimony that he was afraid of going outside, watched television for most of the day, forgot things and needed reminders regarding personal care, had anxiety and panic attacks, and was unable to keep focus and attention.  (Id.)  As discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony.  As such, any error in not explicitly re-stating, or incorporating by reference, the reasons given for discounting plaintiff's testimony with respect to these third parties was harmless and remand is not warranted.  See Molina, 674 F.3d at 1115-22.

1   The only significant difference between the testimony of plaintiff and his relatives

2   was that his sister actually thought that plaintiff was doing much better with his medication,

3   although she also testified that the medication essentially transformed plaintiff into a vegetable

4   that would sit and stare for extended periods on the porch until brought inside the house by a

5   family member.  (AT 65-66, 69.)  However, as the ALJ pointed out, that testimony is inconsistent

6   with the weight of the treatment records, which largely documented that plaintiff was alert,

7   cooperative, oriented, had normal speech, and had good grooming while on medication.  (See,

8   e.g., AT 70-73, 260-61, 337-38, 341, 344, 346, 350, 359.)  As such, the ALJ also permissibly

9   gave plaintiff's sister's testimony lesser weight in that regard.

10  Therefore, the court finds that the ALJ provided specific, clear, and convincing

11  reasons for discounting plaintiff's testimony, as well as the testimony of plaintiff's relatives,

12  regarding his symptoms and functional limitations.  Although the evidence may also be

13  susceptible to other interpretations, it is the function of the ALJ to resolve any ambiguities, and

14  the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.  See

15  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility

16  determination even where the claimant's testimony was somewhat equivocal about how regularly

17  she was able to keep up with all of the activities and noting that the ALJ's interpretation "may

18  not be the only reasonable one").  As the Ninth Circuit explained:

19  > It may well be that a different judge, evaluating the same evidence,
    > would have found [the claimant's] allegations of disabling pain
20  > credible.  But, as we reiterate in nearly every case where we are
    > called upon to review a denial of benefits, we are not triers of fact.
21  > Credibility determinations are the province of the ALJ...Where, as
    > here, the ALJ has made specific findings justifying a decision to
22  > disbelieve an allegation of excess pain, and those findings are
    > supported by substantial evidence in the record, our role is not to
23  > second-guess that decision.

24  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

25  5.   Whether the Appeals Council erred in not remanding the case to the ALJ

26  Because the court finds no prejudicial error in the ALJ's analysis and

18

determinations, the court further concludes that the Appeals Council did not err in denying plaintiff's request for review.

V.   CONCLUSION

In sum, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for summary judgment (ECF No. 14) is DENIED.

2.   The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.

3.   Judgment is entered for the Commissioner.

4.   The Clerk of Court is directed to close this case and vacate all dates.

IT IS SO ORDERED.

DATED:  July 12, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE